IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JERMICHAEL CARROLL,

               OPINION AND ORDER

    Plaintiff,

                 17-cv-137-bbc

  v.

SERGEANT CHAPMAN, SERGEANT ROYCE,
LINDSY WALKER, J. GOHDE, KATHY WHALEN,
MELISSA THORNE, TRISHA ANDERSON and SGT. JUDD,

    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  Pro se plaintiff Jermichael Carroll is proceeding on Eighth Amendment claims against defendants employed at the Columbia Correctional Institution, based on allegations that he was forced to sleep on a "deplorable" mattress on a concrete floor and received no treatment for the pain he suffered because of the mattress. Now before the court is defendants' motion for summary judgment. Dkt. #38. Because I conclude that there is not sufficient evidence from which a reasonable jury could find in plaintiff's favor on his Eighth Amendment claims, I will grant defendants' motion.

  From defendants' proposed findings of fact and plaintiff's responses, I find the following facts to be material and undisputed unless otherwise noted.

UNDISPUTED FACTS

Plaintiff Jermichael Carroll was an inmate at Columbia Correctional Institution from

1

April 2016 to March 2017. All defendants worked at Columbia during the relevant time period: Jason Chatman, Scott Royce and Terrance Judd were security staff working in Columbia's restrictive housing unit 2; Jamie Gohde was the health services unit manager; and Kathleen Whalen, Melissa Thorne and Trisha Anderson were nursing staff.

At various times during his confinement at Columbia, plaintiff was placed in segregation and confined in restrictive housing unit 2. There are 50 cells in that unit, 38 of which were designed for single occupancy and have one raised bed or bunk. Twelve of the cells have double bunks, for a total of 62 beds in the unit. Because of overcrowding in the institution, the average inmate count in restrictive housing unit 2 is 80-90 inmates, so many of the cells, including cells designed for single occupancy, are at double occupancy. If an inmate is assigned to a single occupancy cell in the unit that already houses another inmate, the incoming inmate will generally sleep on a mattress on the floor space. The mattresses provided to inmates in restrictive housing are the same mattresses provided in general population. They are rubber and approximately 2.5 inches thick.

Plaintiff was required to sleep on such a mattress on the floor in restrictive housing unit 2 from August 31, 2016 to October 8, 2016, and again for several shorter periods of time between January and March of 2017. (The parties dispute whether plaintiff was given a damaged mattress and if so, whether any of the defendants knew about it. Plaintiff says his mattress was "damage[d]" and "deplorable," but he does not provide any details about how it was damaged or during what time periods he had a damaged mattress. Plaintiff also says he told defendants Royce, Chatman and Judd about the condition of his mattress and

2

they told him to file a complaint with defendant Walker. Plaintiff says he did so and described his poor cell conditions to Walker, but Walker did not respond. Defendants do not recall plaintiff's complaining about his mattress to any of them.)

Plaintiff received medical attention on numerous occasions during his confinement at Columbia. He also refused medical attention on numerous occasions, including when he was in restrictive housing unit 2. In April 2016, plaintiff complained to nursing staff about several issues, including his shoe restrictions, bullet wounds, skin care and anxiety. Nursing staff referred him to a doctor, whom he saw on April 25, 2016. At his doctor's appointment, plaintiff asked about his mattress. The doctor could have requested a "no floor" restriction for plaintiff, but nothing in plaintiff's medical records indicates that the doctor suggested or believed defendant needed a special restriction for a different mattress or an additional one. The doctor did refer plaintiff to the Special Needs Committee for a special shoe restriction. Plaintiff saw the doctor again in June 2016 for pain from a previous gunshot wound, but the records from that appointment include nothing about plaintiff's sleeping situation.

Plaintiff wrote nursing staff on September 7, 2016, complaining about several matters: his doctor had recently set up "some tests"; he needed to see the doctor about "my eyes"; he was sleeping on the floor with one mattress; and he had "this bullet inside me." Nursing staff responded that Columbia does not allow double mattresses (as some prisons did in the past), and that plaintiff did not have a "no floor" restriction that would prohibit restrictive housing unit staff from placing him in a cell where he would be required to sleep on the floor. Nursing staff then referred plaintiff to an appointment with the doctor. The

next day, on September 8, 2016, a nurse went to see plaintiff, but plaintiff refused medical attention. (It is not clear from the records whether plaintiff then saw a doctor or whether he discussed his sleeping situation with the doctor.)

On September 24, plaintiff wrote nursing staff complaining of knee pain and asked to see the doctor. Nursing staff responded by scheduling plaintiff to see the doctor for chronic pain and placing him on sick call for a nursing appointment. When a nurse came to see plaintiff on October 3, 2016 in restrictive housing unit 2, he again refused to be seen. In mid-October, plaintiff wrote nursing staff about having bullets in his knee removed. Nursing staff responded that such a procedure would require a doctor's referral and that plaintiff could discuss the matter at his upcoming appointment.

Plaintiff also saw medical staff on October 24, 2016, November 3, 2016, January 6, 2017, January 30, 2017 and March 24, 2017, and he refused to be seen by medical staff on February 27 and March 6, 2017. During his appointments, plaintiff was provided pain medication, given instructions for back exercises and given ice, among other things, but he never asked for a "no floor" restriction. (Plaintiff says he did complain to a doctor about his "overall sleeping conditions," but plaintiff does not say when he made those complaints, what he stated in particular or how the doctor responded.)

The parties dispute whether defendants Royce, Chatman or Judd were aware of plaintiff's medical needs. It is undisputed that security staff are generally only aware of particular medical needs of inmates when medical staff or a Special Needs Committee has instituted a medical restriction, such as a "no floor" restriction or a "no top bunk"

4

restriction. However, plaintiff says he complained to defendants Royce, Chatman and Judd about the conditions of the cells, his medical conditions, including bullets in his body and pain, and that he needed better sleeping conditions. He says that Royce, Chatman and Judd told him to file a health service request. Defendants deny that they were aware of plaintiff's medical conditions.

OPINION

Plaintiff was granted leave to proceed on claims against security staff defendants Chapman, Royce, Judd and Walker based on his allegations that he was forced to sleep on a "deplorable" mattress on the floor despite severe pain from medical problems that were exacerbated by his sleeping conditions. Additionally, plaintiff was granted leave to proceed on claims that defendants Walker, Gohde, Whalen, Thorne and Anderson refused to refer him to a doctor and disregarded his health service requests regarding the pain he was suffering as a result of his mattress. (Plaintiff includes in his brief arguments about overcrowding and other conditions, such as bugs and vermin in the cells, but he was not granted leave to proceed on such claims. Therefore, I will not discuss these arguments further.)

Plaintiff's claims are governed by the Eighth Amendment, which requires prison officials to provide prisoners with "the minimal civilized nature of life's necessities," Farmer v. Brennan, 511 U.S. 825, 834 (1970), including adequate bedding and sanitary conditions of confinement. Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016); Gillis v. Litscher, 468

5

F.3d 488, 493 (7th Cir. 2006). Additionally, a prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it." Rice ex rel. Rice v. Corrections Medical Services, 675 F.3d 650, 665 (7th Cir. 2012).

In this instance, plaintiff has failed to show that any defendant subjected him to inhumane conditions of confinement or showed deliberate indifference to a serious medical need of his. With respect to his claim regarding his mattress, plaintiff would need to prove two things: (1) that being forced to sleep on a mattress on the floor in the restrictive housing unit on a temporary basis was "from an objective standpoint, sufficiently serious that it result[ed] in the denial of 'the minimal civilized measure of life's necessities,'" or aggravated a serious medical condition; and (2) defendants were deliberately indifferent to the adverse conditions. Gray, 826 F.3d at 1005. Plaintiff's claim regarding his mattress fails with respect to both requirements.

Plaintiff says that his mattress was damaged and in "deplorable" condition, but he provides no details about how it was damaged or why it was "deplorable." He suggests that being forced to sleep on the floor without a double mattress is a constitutional violation. However, although courts have found that a lack of bedding may qualify as the denial of a basic life necessity, courts have not concluded that the constitutional protection applies to an uncomfortable mattress. E.g., Burton v. Downey, 805 F.3d 776, 786 (7th Cir. 2015) (unconstitutional conditions of confinement involve "deprivations of essential food, medical

6

care, or sanitation" and plaintiff presented no evidence to support allegation that sleeping on single mattress amounted to deprivation of this magnitude); Putney v. Likin, 656 Fed. Appx. 642 (4th Cir. 2016) ("In this case, [the inmate] has so far failed to explain how the denial of a mattress was anything more than a discomfort."); Alfred v. Bryant, 378 Fed. Appx. 977, 980 (11th Cir. 2010) ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency."); Thomas v. Doe, 2016 WL 3951035, at *1 (C.D. Ill. July 20, 2016) ("While the thin mattress may have been uncomfortable, nothing suggests that Plaintiff suffered the type of extreme deprivation required to state a constitutional claim."); Marshall v. Nickel, 2007 WL 5582139, at *9 (W.D. Wis. Jan. 29, 2007) (use of uncomfortable, rubber mat as mattress for several months failed to state claim under Eighth Amendment). In this instance, plaintiff has failed to provide specific reasons why the mattress was inadequate. Therefore, plaintiff has failed to raise any genuine factual dispute regarding whether he was subjected to inhumane conditions of confinement.

Nor has plaintiff shown that sleeping on the floor on a single mattress caused him serious pain or aggravated his medical conditions. Although plaintiff says that sleeping on the floor was painful, he has submitted no evidence suggesting that he had a medical need for a "no floor" restriction. Instead, the evidence suggests the opposite. Plaintiff says that he complained to his doctor about his sleeping conditions, but his doctor did not recommend that plaintiff receive an additional mattress or a no floor restriction. Burton, 805 F.3d at 786 (rejecting plaintiff's claim that defendants failed to provide him a second

mattress where plaintiff's "treating physician examined his condition and concluded that a second mattress was unnecessary because it would not affect his condition at all").

Moreover, even if plaintiff could show that sleeping on the floor caused him serious pain or qualified as a sufficiently serious deprivation for purposes of the Eighth Amendment, plaintiff has presented no evidence that any defendant acted with deliberate indifference. Plaintiff says he complained to defendants Chapman, Royce, Judd and Walker about sleeping on the floor, but the evidence shows that these defendants did not have the responsibility for providing "no floor" restrictions. Rather, that responsibility was left to medical care providers and the Special Needs Committee. Because the security staff defendants were not responsible for evaluating whether plaintiff needed a medical restriction, they cannot be found to have been deliberately indifferent to plaintiff's purported need for a "no floor" restriction or better mattress. Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants . . . can rely on the expertise of medical personnel."); Knight v. Wiseman, 590 F.3d 458, 465 (7th Cir. 2009) (officers were entitled to rely on fact that prisoner had no medical work restrictions on his record to conclude that he could work without injury).

Finally, plaintiff's claim against the medical defendants also fails because, contrary to the allegations in plaintiff's complaint, the evidence shows that plaintiff received medical attention on several occasions, but that plaintiff either failed to complain about his mattress and sleeping conditions, or his medical care providers declined to recommend a "no floor" restriction. Specifically, defendants Gohde, Whalen, Thorne and Anderson saw or

8

attempted to see plaintiff for appointments on several occasions and referred plaintiff to the prison doctor for follow-up appointments in response to plaintiff's complaints about pain. No reasonable jury could conclude that these defendants showed deliberate indifference to plaintiff's complaints about pain. (Plaintiff argues that the doctor should have done more to address plaintiff's sleeping situation, but the doctor is not a defendant in this case.)

In sum, because plaintiff has identified no genuine disputes of material fact that undermine the above conclusions, I will grant defendants' motion for summary judgment on plaintiff's Eighth Amendment claims against them. Celotex Corp. v. Catrett, 477 U.S. 317, 322 n. 3 (1986) ("An adverse party may not rest upon mere allegations or denials of his pleadings, but his response must set forth a specific showing that there is a genuine issue for trial.").

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Sergeant Chapman, Sergeant Royce, Lindsy Walker, J. Gohde, Kathy Whalen, Melissa Thorne, Trisha Anderson and Sergant Judd, dkt. #38, is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 21st day of June, 2018.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge